

*Colony Insurance Company*
*Colony National Insurance Company*
*Colony Specialty Insurance Company*

# PRIVACY NOTICE

Privacy is important to us. We understand that consumers really care about their privacy and want it to be protected. We are committed to safeguarding nonpublic personal information we collect about our consumers.

We treat personal information carefully and take steps to assure that it remains private. We allow only authorized employees to have access to personal information. We maintain physical, electronic and procedural security protections to safeguard the information in our records.

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use personal information from consumers on applications or other forms; from our transactions with consumers, such as payment and claims history; and from third parties, such as credit reports, driving and medical records, and claims history.

Except as required or permitted by law, we do not share personal information outside our company without obtaining the consumer's permission.

Keeping consumer information accurate and up to date is important to us. Consumers may see and request correction of personal information about them in our files, or contact us with questions about our privacy policy by writing to Privacy Coordinator, Colony Group, PO Box 85122, Richmond, Virginia 23285.



EXHIBIT
1

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, Texas 78714-9104
Fax #: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-Mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES

Should you have a dispute concerning your premium or about a claim you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY

This notice is for information only and does not become part or condition of the attached document.

# AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departmento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departmento de Seguros de Texas:

P.O. Box 149104
Austin, Texas 78714-9104
Fax #: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-Mail: ConsumerProtection@tdi.state.tx.us

## DISPUTES SOBRE PRIMAS O RECLAMOS

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resulve la disputa, puede entonces comunicarse con el Departmento de Seguros de Texas.

## UNA ESTE AVISO A SU POLIZA

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.



IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.

Dale Pilkington, President

Craig Comeaux, Secretary

**Colony Insurance Company**
**Colony Specialty Insurance Company**
**Colony National Insurance Company**
8720 Stony Point Parkway, Suite 300
Richmond, VA 23235

ZPJCG-0408

# LAWYERS PROFESSIONAL LIABILITY DECLARATIONS

**COLONY INSURANCE COMPANY**
**8720 STONY POINT PARKWAY**
**SUITE 300**
**RICHMOND, VA 23235**
**(800) 577-6614 (All Inquiries)**

**DATE ISSUED**
02/27/2009 KS

In consideration of the premium, insurance under all sections of this policy is provided to the "named insured" only with respect to those coverages for which a limit of liability is shown, subject to all the terms of this policy including forms and endorsements made part thereof.

## THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.
## RETROACTIVE DATE: 02/26/2007

INCEPTION: 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN

1. **NAME AND MAILING ADDRESS OF NAMED INSURED:**

   MATTHEWS & ASSOCIATES
   2905 SACKETT
   HOUSTON, TX 77098

2. **AGENCY NAME AND MAILING ADDRESS:**

   COLEMONT INSURANCE BROKERS OF TEXAS, LP
   (HEATH)(DALLAS)
   5910 NORTH CENTRAL EXPRESSWAY, SUITE 500
   SUITE 400 (CORPORATE)
   DALLAS, TX 75206

3. **POLICY NUMBER:**   EO404552

4. **POLICY PERIOD:**   02/26/2009 TO 02/26/2010

5. **COVERED PROFESSIONAL SERVICES:**   THE PRACTICE OF LAW

6. **LIMIT OF INSURANCE:**
   |   |   |   |
   |---|---|---|
   | a. | $2,000,000.00 | Each Claim |
   | b. | $2,000,000.00 | Aggregate |

7. **DEDUCTIBLE:**
   |   |   |   |
   |---|---|---|
   | a. | $25,000.00 | Per Claim Deductible |
   | b. | N/A | Aggregate Deductible |

8. **PREMIUM:**
   Flat Premium:   $35,672.00
   Fees:   $0.00

9. **OPTIONAL SUPPLEMENTAL EXTENDED REPORTING PERIOD:**
   One Year:   100   % of the annual premium shown in Item 8.
   Three Years:   175   % of the annual premium shown in Item 8.
   Five Years:   250   % of the annual premium shown in Item 8.

   Restrictions apply. See Section VI of the policy for details. Must be requested in writing and premium paid within thirty (30) days of expiration or termination.

10. **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

    | | | | | |
    |---|---|---|---|---|
    | LPL0001-0907 | LPL013-1007 | LPL029-1007 | LPL041B-0108 | LPL045-1007 |
    | PRIVACYNOTICE-0408 | U002-0904 | U094-0702 | U577-0908 | ZPJCG-0408 |
    | IL1201-1185 | TXNOTICE-0507 | | | |

_____
Signature of Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
   Colony Insurance Company,
   Colony National Insurance Company, or
   Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702

Page 1 of 1

# LAWYERS PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY
PLEASE READ CAREFULLY

## PROVISIONS

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations, and any other person or organization qualifying as a "Named Insured" under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII - DEFINITIONS.

In consideration of payment of the premium, in reliance upon the statements in the "application" (and all attachments and materials submitted therewith), and subject to all the provisions of this Policy, we agree with you as follows:

## SECTION I – COVERAGES

1.  Insuring Agreement

    a.  We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of your "legal services" rendered or that should have been rendered. We will have the right and duty to defend any insured against a "claim" seeking those "damages." However, we will have no duty to defend any insured against any "claim" seeking "damages" for "legal services" to which this insurance does not apply. We may, at our discretion, investigate any "claim" or suit and settle any "claim" that may result, subject to SECTION V – CONDITIONS, 10. Limited Consent To Settle. But:

        (1) The amount we will pay for "damages" is limited as described in SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE;

        (2) Our right and duty to defend end when we have used up the applicable Limits of Insurance in the payment of judgments, settlements or defense costs.

    b.  This insurance applies to "claims" for "damages" only if:

        (1) The "damages" arise out of an act, error or omission in the conduct of an insured's "legal services";

        (2) The "damages" arise out of "legal services" that took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy;

        (3) The "claim" is reported in writing to us subsequent to the effective date and prior to the expiration date of the "Policy Period" or Extended Reporting Periods, if applicable; and

        (4) A potential "claim", event or circumstance that could give rise to a subsequent covered "claim" is reported in writing to us during the "policy period."

    c.  All "claims" for "damages" arising out of "legal services" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured and reported to us.

    d.  All "claims" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of "claims", "insureds", or claimants, will be considered to be one "claim" and will be deemed to have taken place at the time the first of these related "claims" is made against any insured and reported to us. All "claims" based upon such logically or causally connected "claims" shall be deemed to constitute a single "claim", and shall be

subject to a single Deductible and the amount stated in the Declarations as LIMITS OF INSURANCE – EACH CLAIM.

e.  We will pay, with respect to any "claim" or suit against an insured:

(1) All fees, costs or expenses resulting from the defense and appeal of a covered "claim" other than salary costs of our employees;

(2) All expenses we incur;

(3) The cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance;

(4) All reasonable expenses incurred by any insured at our request to assist in the investigation or defense of a "claim" or suit, including actual loss of earnings up to $500 a day because of time missed from work;

(5) All costs taxed against any insured in a suit;

(6) Prejudgment interest awarded against an insured on that part of the judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer;

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Insurance;

(8) Reasonable and necessary amounts paid for legal fees and expenses incurred by an insured to investigate and defend disciplinary proceedings incurred will be reimbursed upon submission to the Company of satisfactory written proof of such legal fees and expenses, provided that:

(a) The act giving rise to the disciplinary proceeding is based upon or arises out of "legal services" provided by or on behalf of the "Named Insured";

(b) The act giving rise to the disciplinary proceeding took place subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the "Policy Period;"

(c) As of the effective date of this Policy, no insured had knowledge of such disciplinary proceeding or any fact, circumstance, situation or incident which would reasonably lead to a belief that such disciplinary proceeding was likely; and

(d) The event is reported to us in writing during the "Policy Period."

The total limit for reimbursement under this Policy for all eligible disciplinary proceedings reported shall not exceed $10,000. No reimbursement pursuant to this section (8) will be made for any payment by or on behalf of the insured for taxes, criminal or civil fines, penalties, sanctions, registration or licensing fees, or any monetary judgment, award or settlement of any kind.

All payments made under this Item e. reduce the Limits of Insurance.

2.  Exclusions

This Policy does not apply to any "claim":

a.  Based on or directly or indirectly arising from:

(1) A "Legal Service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "Legal Service" could give rise to a "Claim";

(2) Any common fact, circumstance, transaction advice or decision involved in a "legal service" reported as a "claim" or potential "claim" under any prior Policy; or

(3) Any "claim", suit, act, error or omission disclosed in the "application" for this Policy.

b.  Based on or directly or indirectly arising from an insured's "legal services" for:

(1) Any other insured under the Policy;

(2) Any firm, organization, entity or trust not named in the Declarations in which any insured

    (a) has or had any ownership interest,

    (b) is or was a director, officer, partner, principal, shareholder or employee, or

    (c) at any time managed, operated or exercised direct or indirect control;

however (2) above does not apply to any entity that qualifies as "predecessor firm" or for "legal services" provided to an entity in which any Insured, individually or collectively have ownership representing 10% or less of the ownership of that entity.

c. Based on or directly or indirectly arising out of the insured's services or capacity as an accountant or tax advisor, real estate agent or broker, investment advisor or broker, or insurance agent or broker;

d. Based on or directly or indirectly arising out of the rights or duties under any agreement including disputes over fees for services;

e. Based on or directly or indirectly arising out of any liability assumed by any insured under any contract or agreement.  This exclusion does not apply to liability any insured would have incurred in the absence of such contract or agreement;

f. Based on or directly or indirectly arising out of any actual or alleged bodily injury to or sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

g. Based on or directly or indirectly arising out of or resulting from an act, error, or omission of an individual or entity with whom any insured shares common office space or common office facilities who is not an insured under this Policy;

h. Based on or directly or indirectly arising out of or resulting from any insured's activities performed in the capacity of a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; except if any insured is deemed to be a fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

i. Based on or directly or indirectly arising out of or resulting from any insured's capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof unless an insured is deemed as employee solely by virtue of rendering "legal services" to such governmental body, the remuneration for which services inures to the benefit of an insured;

j. Based on or directly or indirectly arising out of or resulting from:

    (1) Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

    (2) The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or

    (3) Any criminal, fraudulent, or dishonest act.

However, we shall defend such allegations against any insured if it involves a "claim" otherwise covered under the Policy until final adjudication.

k. Based on or directly or indirectly arising out of any "claim" based on discrimination by any insured on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability or sexual preference;

l. For payment of any fine, sanction or penalty of any nature against any insured;

m. Relating in whole or in part to the dissolution of any law firm unless an insured is not a party in the dissolution and the "claim" is based on or directly or indirectly arises out of any insured's representation of one or more parties to the dissolution;

n. Based on or directly or indirectly arising out of or resulting from:

(1) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time;

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

    (b) "Claim" or suit by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

(3) The failure to discover or disclose the existence or amount of "hazardous materials";

(4) Any obligations to share "damages" with or indemnify another party whom must pay "damages" because of injury or damage relating to "hazardous materials"; or

(5) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), (3), or (4) above; whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

This exclusion does not apply to an act, error or omission by or on behalf of the "Named Insured" in providing "legal services" that are otherwise covered by this policy.

o. Based upon or directly or indirectly arising out of any insured's capacity as a beneficiary or distributee of any trust or estate.

p. Based on or directly or indirectly arising out of any insured's failure or refusal to hire or employ; or any insured's termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or any other breach of duty arising out of employment-related practices, policies, acts, or omissions.

q. For infringing upon another's patent, copyright, trademark, trade secret, trade dress, slogan, advertising idea or other intellectual property.

## SECTION II – WHO IS AN INSURED

1. The "Named Insured" stated in the Policy Declarations and any "predecessor firm" of the "Named Insured."

2. Any person who is or was your partner, officer, member, director, stockholder, of counsel or independent contractor but only for "legal services" rendered on your behalf or on behalf of any "predecessor firm." However this provision does not include any such member, partner, officer, director, stockholder, of counsel or independent contractor who joins your firm after the inception date of this Policy unless reported to us as required in SECTION V – CONDITIONS, 12. Change in Membership of the Firm, and so acknowledged by us.

3. Any non-lawyer who is or was your employee but solely while acting on your behalf or on behalf of any "predecessor firm".

4. The heirs, executors, administrators and legal representatives of each insured, as defined in 1., 2. and 3. above, in the event of death, incapacity or bankruptcy of such insured, but only for liability arising out of "legal services" rendered by any insured prior to such insured's death, incapacity, or bankruptcy.

## SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE

1. Our liability for each "claim" covered under this Policy shall not exceed the amount stated in the Declarations as LIMITS OF INSURANCE – EACH CLAIM. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid on each "claim" or suit covered hereunder.

2. Subject to LIMITS OF INSURANCE – EACH CLAIM, our liability for all "claims" covered under this Policy shall not exceed the amount stated in the Declarations as LIMITS OF INSURANCE – AGGREGATE. This limit is the maximum amount for which we are liable for the sum of all fees, costs and expenses incurred in the defense of and "damages" paid for all "claims" covered under this Policy.

3. The number of insureds covered by the Policy shall not operate to increase the Limits of Insurance.

4. Two or more "claims" or suits arising out of the same, related or continuous "legal services" shall be considered a single "claim."

5. If two or more Polices of insurance issued by us apply to the same "claim" or "claims" for which any insured is legally liable, we shall not be liable under this Policy for more than the Limits of Insurance of that Policy issued by us which has the highest applicable Limits of Insurance. If the Limits of Insurance on each Policy is the same, only one limit will apply.

6. Our obligation under the Policy to pay "damages" on your behalf applies only to the amount of "damages" in excess of any Deductible amounts stated in the Declarations as applicable to such coverage.

   We, at our sole election and option, may pay any part of or all the Deductible amount to effect settlement of any "claim" or suit, and upon notification of the action taken, you shall reimburse us within thirty (30) days for such part of the Deductible amount as has been paid by us.

   If an aggregate deductible is indicated in the Declarations, this Deductible applies as follows:

   a. All amounts you pay as Deductibles will be limited to the amount shown as the Aggregate Deductible; and

   b. All "damages" and fees, costs and expenses incurred in the defense of a suit will apply towards this Aggregate Deductible.

## SECTION IV – TERRITORY

This Policy only applies to "claims" which are brought in the United States, its territories or possessions, or Canada.

## SECTION V – CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of any insured or of the estate of an insured will not relieve us of our obligations under this Policy.

2. Duties in the Event of a "Claim"

   a. If during the "policy period" or any Extended Reporting Period (if applicable) a "claim" is brought against any insured arising out of an event or circumstance, you must:

      (1) Immediately record the specifics of the "claim" or suit and the date received;

      (2) Provide us with written notice of the "claim" or suit as soon as practicable, but in no event later than thirty (30) days after the end of the "policy period" or before the end of any Extended Reporting Period (if applicable);

      (3) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or suit; and

      (4) Cooperate with us in the investigation, defense or settlement of the "claim" including:

         (a) Upon request, submit to examination and interrogation under oath by our representative;

         (b) Attend hearings, depositions and trials as requested by us;

         (c) Assist in securing and giving evidence and obtaining the attendance of witnesses; and

         (d) Provide written statements to our representative and meetings with such representative for the purpose of investigation and/or defense, all without charge to us.

b. No insured will, except at an insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Notice of Potential "Claims"

If, during the "policy period", the First "Named Insured" shall become aware of any event or circumstance which may reasonably be expected to give rise to a "claim" being made against any insured, the First "Named Insured" must notify us in writing during the "policy period." The written notice shall include:

a. Specific details of the event or circumstances and why you believe it may give rise to a "claim;"

b. The names and addresses of any injured persons and potential claimants;

c. The names and addresses of any witnesses and the person(s) who committed or caused the possible event or circumstance; and

d. Any written notice from the potential claimant describing the event or circumstance.

If this notice is submitted to us during the "policy period", then any "claim" that is subsequently made against any insured arising out of this event or circumstance about which notice was given to us shall be deemed for the purpose of this Policy to have first been made during the "policy period." This provision shall not apply to, nor shall the reporting of events, circumstances, or potential "claims" be permitted, during any Basic or Supplemental Extended Reporting Period.

4. Legal Action Against Us

No person or organization has a right under this Policy:

a. To join us as a party or otherwise bring us into a suit asking for "damages" from an insured; or

b. To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial but we will not be liable for "damages" that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Insurance. An agreed settlement means a settlement and release of liability signed by us, an insured and the claimant or the claimant's legal representative.

5. Other Insurance

If other valid and collectible insurance is available to an insured for a "claim" we cover under this Policy, our obligations are limited as follows:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, available to an insured for any "claim" or suit covered hereunder, unless such insurance is written as a specific excess insurance policy for limits in excess of this policy. This insurance is also excess of any indemnification agreement requiring another party to indemnify and/or hold harmless an insured under this policy.

6. Representations

You, through your insurance agent or broker have provided information to us which has induced us to issue this policy. Included in this information are an "application" and other correspondence including history regarding your losses, "claims" or incidents which may give rise to "claims" or suits. This history includes a listing of such losses, "claims" or incidents regardless of whether or not insurance may apply.

This information is incorporated into the policy and is material to our decision to issue this policy. You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to offer the terms and conditions under which this policy is issued.

You, on behalf of all insureds, warrant the truth of such information as of the effective date of this policy. You declare that you know of no "claim", incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue,

incomplete or misleading any information or statement made in the "application" or other correspondence which is provided.

You understand that if such information is false or misleading, it may limit or void coverage under this policy.

7. Transfer Of Rights Of Recovery Against Others To Us

If an insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. No insured may do anything after a loss to impair our rights to recover any payment made under this policy. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

8. Cancellation and Non-Renewal

This Policy may be cancelled by the First "Named Insured" by surrender thereof to us or by mailing to us written notice stating when thereafter the cancellation shall be effective. We may cancel this Policy by mailing a written notice to the First "Named Insured" at the address shown in this Policy. The effective dates of such cancellation shall be not less than thirty (30) days (ten (10) days for non-payment of premium) following mailing of the notice of cancellation. The time of surrender or the effective date of cancellation stated in the notice shall become the end of the "policy period".

Delivery of such written notice either by the First "Named Insured" or by us shall be equivalent to mailing. If this Policy is issued to comply with any law or regulation that requires notice of cancellation to any governmental body, cancellation shall not be effective until the required notice has been provided by you or us.

If we cancel this Policy, unearned premium shall be computed pro rata; if the First "Named Insured" cancels, the unearned premium shall be the customary short rate proportion of the premium. In either event, the applicable unearned premium shall be returned to the First "Named Insured" as soon as practicable following the effective date of the cancellation. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of the effective date of the cancellation.

If we elect not to renew this Policy for an additional "policy period", we shall mail written notice to the First "Named Insured" at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".

9. First "Named Insured" as Sole Representative

The First "Named Insured" shall act on behalf of all insureds with respect to completing the "application" for this insurance, including representing the truth and completeness of all information as required in SECTION V – CONDITIONS, 2. Duties in the Event of a "Claim" and SECTION V – CONDITIONS, 3. Notice of Potential "Claims", giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, agreeing to any changes in this Policy, and electing whether or not to purchase the Supplemental Extended Reporting Period described in SECTION VI – EXTENDED REPORTING PERIODS.

10. Limited Consent to Settle

We have the right to negotiate the settlement of any "claims" as we deem expedient, whether within or above the Deductible, and we will seek your consent to any settlement.

If you refuse to consent to any settlement we recommend, you shall thereafter be obligated to negotiate or defend such "claim" independently of us. Subject to the Limits of Insurance, our liability for such "claim" is limited to the amount in excess of the Deductible which we would have contributed to the settlement had you consented to settlement at that time plus any expenses covered by the Policy incurred up to the date of your refusal to settle.

11. Change in Control; Mergers and Acquisitions

a. If, during the "policy period", any of the following events occur:

(1) The acquisition of any "Named Insured", or all or substantially all of its assets, by another entity or the merger or consolidation of any "Named Insured" into or with another entity such that the "Named Insured" is not the surviving entity;

(2) The appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any "Named Insured";

Coverage under this Policy will continue in full force and effect with respect to "legal services" rendered before such event, but coverage will cease with respect to "legal services" committed after such event. After any such event, this Policy may not be canceled by the "Named Insured" and the entire premium for this Policy will be deemed fully earned.

b. If after the effective date of this Policy, the "Named Insured" merges or consolidates with another entity such that the "Named Insured" is the surviving entity or acquires another entity or substantially all of the assets of another entity, no coverage shall be afforded under this Policy for any "claim" involving the assets acquired or the entity which is consolidated or merged with or acquired unless the following conditions are met:

(1) The insured provides written notice of such merger, consolidation creation, or acquisition to us within thirty (30) days after the effective date of such merger, consolidation, creation or acquisition, or by the end of the "policy period", whichever is earliest;

(2) The insured provides us with such information as we may deem necessary;

(3) The insured accepts any special terms, conditions, exclusions or additional premium charge as may be required; and

(4) We, at our sole discretion, agree to provide such coverage.

12. Change in Membership of the Firm

The "Named Insured" shall report to us in writing within forty-five (45) days but before Policy expiration, whichever is earlier, any increase in new members, lawyers acting of counsel or as independent contractors, or others qualifying as insureds under SECTION II – WHO IS AN INSURED and providing "legal services" if such increase exceeds 50% of the number of members, employees, lawyers acting of counsel or as independent contractors providing "legal services" on behalf of the "Named Insured" as of the effective date of this Policy.

As part of this reporting requirement, the "Named Insured" will provide any additional information we may require. We reserve the right to charge an additional premium.

13. Fraudulent Acts

If any insured shall commit fraud in proffering any "claim", this insurance shall become void from the date such fraudulent "claim" is proffered.

14. Assignment of Interest Limitation

Assignment of interest under this policy shall not bind us unless we agree and endorse the assignment onto this policy.

## SECTION VI – EXTENDED REPORTING PERIODS

In the event this Policy is cancelled or non-renewed by you or us, you may be entitled to the following extensions of coverage.

1. Basic Extended Reporting Period

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy period" and lasts for thirty (30) days. This extension of coverage does not apply if other insurance insures the "claim" for "damages" arising out of "legal services."

2. Supplemental Extended Reporting Period

A Supplemental Extended Reporting Period is available, but only by endorsement and for an extra premium charge. Please refer to Item Number 9. in the Declarations of this Policy for premium options.

a. You must give us a written request for the endorsement and pay any premium due within thirty (30) days after the end of the "policy period."  The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

b. The Supplemental Extended Reporting Period starts when the Basic Extended Reporting period set forth in paragraph a. above ends.

c. All premiums paid for the Supplemental Extended Reporting Period shall be deemed fully earned and non-refundable as of the first day of the Supplemental Extended Reporting Period.

However, there shall be no entitlement to these extensions if cancellation or non-renewal is due to your:

(1) Non-payment of premium or Deductible due;

(2) Failure to comply with the terms and conditions of the Policy; or

(3) Misrepresentation or Fraud.

These extensions of coverage shall be subject to all the terms and conditions of this Policy and shall apply to "claims" first made against an insured and reported to us that result from "damages" that arise out of a "legal service" performed subsequent to the Policy effective date or Retroactive Date, if any, and before the end of the "policy period."

The fact that the period during which "claims" may be reported to us under this Policy is extended by virtue of the Basic and Supplemental Extended Reporting Periods does not in any way increase the Limits of Insurance of this Policy.

## SECTION VII – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

1. "Application" means:

   a. The "application", including any material submitted therewith, for this policy; and

   b. The "application(s)", including any material submitted therewith, for all previous policies issued by us providing continuous coverage until the inception date of this Policy.

2. "Claim" means a demand for monetary "damages" arising out of a "legal service" made against any insured by service of suit, the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief.

3. "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

4. "Hazardous materials" means "pollutants", lead, asbestos, silica, mold, fungi or bacteria, or radon and materials containing them.

5. "Legal services" means usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured" described in the Declarations of this Policy including the following services as:

   a. a Notary Public;

   b. an Arbitrator or Mediator;

   c. an Administrator, Conservator, Receiver, Executor, Trustee, Guardian or while acting in a similar fiduciary capacity for clients of the "Named Insured";

   d. a member of a formal accreditation board, ethics review or peer review board if asked to serve on behalf of the "Named Insured";

   e. a member of a Bar Association.

   "Legal services" also includes "personal injury" to which this insurance applies.

6. "Named Insured" means the individual, corporation, partnership, limited liability company, limited partnership, or other entity named in Item 1. in the Declarations.

7. "Personal injury" means injury arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

8. "Policy period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to Section V. 8. of this Policy.

9. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10. "Predecessor firm" means an entity that was engaged in "legal services" to whose financial assets and liabilities the "Named Insured" is the majority successor in interest prior to the effective date of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number  _____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| EO404552 | 02/26/2009 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MATTHEWS & ASSOCIATES | COLEMONT INSURANCE BROKERS OF TEXAS, LP |

**COVERAGE PARTS AFFECTED**

PROFESSIONAL LIABILITY

**CHANGES**
**EXCLUSIONS FOR AREA OF PRACTICE-**

**PLAINTIFFS CLASS ACTION WORK**

It is hereby understood and agreed that SECTION I – COVERAGES, 2. Exclusions is amended to include the following:

Based upon, arising out of, attributable to, or directly or indirectly resulting from the Insured's representation of one or more Plaintiffs in any multi-plaintiff or collective action or class action lawsuit, whether or not the class has been formally certified by any Court.  This exclusion shall preclude coverage for the entirety of the "claim" and the company shall have no duty to defend the Insured against such "claim" even if other, covered allegations are simultaneously made, or added to the "claim" at a later date.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

_____
Authorized Representative Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF DESIGNATED INDIVIDUAL(S)

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY


SECTION II – WHO IS AN INSURED

The individual(s) shown in the Schedule below including their heirs, administrators or legal representatives in the event of their death, incapacity or bankruptcy are not insureds under this policy.


## SCHEDULE

ABRAHAM
WATKINS
NICHOLS
SORRELS
FRIED


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PUNITIVE, EXEMPLARY OR MULTIPLE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

**SECTION I – COVERAGES**, 2. Exclusions is amended and the following added:

This insurance does not apply to any "claim" for or awards of:

1. Punitive, exemplary or multiple damages; or

2. Equitable or non-pecuniary relief;

including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

A. **SECTION I – COVERAGES**, paragraph 2. Exclusions is amended and the following added:

    This Policy does not apply to any "claim" based on or directly or indirectly arising out of or resulting from:

    (1) "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

    (2) Any act of terrorism:

        (a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

        (b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

        (c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

    regardless of any other cause or event that contributes concurrently or in any sequence to the injury or "damage" in (1) or (2) above; including

    (3) Damages arising out of or resulting, directly or indirectly, from (1) or (2) above that are awarded as punitive damages.

B. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or "damage" that is otherwise excluded under this Coverage Part.

C. The following definitions are added to **SECTION VII – DEFINITIONS**:

    "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in the  Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

        a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

        b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

    ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY

**SECTION I – COVERAGES**, paragraph 2. Exclusions is amended and the following added:

This Policy does not apply to any "claim" based on or directly or indirectly arising out of or resulting from:

War, including:

(a) undeclared or civil war;

(b) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

(c) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium".  "Minimum earned premium" means the premium that is calculated as follows:

1.  The total policy premium as shown in the policy Declarations, plus

2.  Any premium adjustment by endorsements, plus

3.  Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1.  If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2.  If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SECURITY INCIDENT RESPONSE COVERAGE

This endorsement modifies insurance provided under the following:

INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY POLICY
LAWYERS PROFESSIONAL LIABILITY POLICY

| SCHEDULE | | |
|---|---|---|
| $ | 500 | Per Security Incident Deductible |
| $ | 10,000 | Security Incident Response Expenses Limit |
| $ | 10,000 | Security Incident Response Expenses Aggregate Limit |

A. **SECTION I – COVERAGES** is amended with the addition of the following:

We will reimburse you, in excess of the deductible indicated in the Schedule shown above, up to the limit indicated in the Schedule shown above, for "security incident response expenses" you incur resulting directly from a "security incident".

In order to be reimbursed by us under the coverage afforded by this endorsement, you must:

1.  incur the "security incident response expenses"; and

2.  report those expenses to us with supporting documentation;

after the Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period".  No Extended Reporting Period applies to the coverage provided hereunder.

"Security incident response expenses" paid to you under this endorsement will reduce the limit of insurance stated in the Declarations as LIMITS OF INSURANCE - AGGREGATE.

B. Solely as respects the coverage afforded by this endorsement, the following definitions are added:

1.  "Security incident" means any actual incident regarding your clients' personal information collected by you, held within your network or for which you are otherwise responsible for safeguarding.

2.  "Security incident response expenses" means those expenses you incur:

    a.  to hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

    b.  to comply with state or local privacy laws requiring that notification is given to individuals when the security, confidentiality, or integrity of their personal information has been compromised.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U577-0908

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number ___1___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| EO404552 | 02/26/2009 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MATTHEWS & ASSOCIATES | COLEMONT INSURANCE BROKERS OF TEXAS, LP |

**COVERAGE PARTS AFFECTED**

PROFESSIONAL LIABILITY COVERAGE

**CHANGES**

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM LPL013-1007 – EXCLUSION OF DESIGNATED INDIVIDUAL(S) IS AMENDED PER THE ATTACHED.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.




04/30/2009 JL

_____
Authorized Representative Signature

**IL 12 01 11 85**  Copyright, Insurance Services Office, Inc., 1983  Copyright, ISO Commercial Risk Services, Inc., 1983  **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF DESIGNATED INDIVIDUAL(S)

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY


SECTION II – WHO IS AN INSURED

The individual(s) shown in the Schedule below including their heirs, administrators or legal representatives in the event of their death, incapacity or bankruptcy are not insureds under this policy.


**SCHEDULE**

ABRAHAM
WATKINS
NICHOLS
SORRELS
FRIEND



ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

LPL013-1007