CAUSE NO. 2010-01666

| | | |
|---|---|---|
| CRAIG PINGLE, individually, and LOUIS J. YOPPOLO AS TRUSTEE FOR THE BANKRUPT ESTATE OF CRAIG AND CHERLYNN PINGLE<br>Plaintiffs, | § § § § § § | IN THE DISTRICT COURT OF |
| V. | § § | HARRIS COUNTY, TEXAS |
| ABRAHAM, WATKINS, NICHOLS, AGOSTO & FRIEND, f/k/a ABRAHAM, WATKINS, NICHOLS, SORRELS, MATTHEWS & FRIEND; DAVID P. MATTHEWS, Individually; DAVID P. MATTHEWS, P.C.; JULIE L. RHOADES, individually; JIM S. ADLER, individually, JIM S. ADLER P.C., Defendants | § § § § § § § § § § | 152nd JUDICIAL DISTRICT |

## PLAINTIFFS' THIRD AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, Craig Pingle, individually, and Louis J. Yoppolo, Trustee for the Bankrupt Estate of Craig and Cherlynn Pingle, complaining of Defendants Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, F/k/a Abraham, Watkins, Nichols, Sorrels, Matthews & Friend, David P. Matthews, individually, David P. Matthews P.C., Julie L. Rhoades, individually, Jim S. Adler, individually, Jim S. Adler P.C., Robert W. Goldwater, III, individually, and The Goldwater Law Firm, P.C. and would respectfully show as follows:

### I
### DISCOVERY CONTROL PLAN

Based upon this Petition, this case should be controlled by discovery control plan Level 2 pursuant to the TEXAS RULES OF CIVIL PROCEDURE, Rule 190.3.

### II
### PARTIES

Plaintiff, Craig Pingle is an individual residing in Hancock County, Ohio.

Plaintiff, Louis J. Yoppolo, Trustee for the Bankrupt Estate of Craig and Cherlynn Pingle is an individual residing in Ohio.

Defendant, Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, formally known as Abraham, Watkins, Nichols, Sorrels, Matthews & Friend is a law firm in the State of Texas and has answered herein.

Defendant, David P. Matthews, is an attorney licensed to practice law in the State of Texas and has answered herein.

Defendant, David P. Matthews P.C. is law firm and Professional Corporation and has answered herein.

Defendant, Julie L. Rhoades, is an attorney licensed to practice law in the State of Texas and has answered herein.

Defendant, Jim S. Adler, is an attorney licensed to practice law in the State of Texas and has answered herein.

Defendant, Jim S. Adler P.C. is law firm and Professional Corporation and has answered herein.

Defendant, Robert W. Goldwater, III, is an attorney licensed to practice law in the State of Arizona and has answered herein.

Defendant, Goldwater Law Firm P.C., a foreign corporation organized and existing under the laws of the State of Arizona and has answered herein.

## III
## JURISDICTION AND VENUE

This Court has personal jurisdiction over each Defendant because the acts and omissions complained of herein occurred in Texas, each Defendant does business in the State of Texas, has committed a tort, in whole or in part in Texas, is a resident and citizen of Texas, has minimum

contacts with the State of Texas, and/or purposefully availed themselves of the privilege of conducting activities in Texas. Specifically, with regard to Defendant Robert W. Goldwater, III, and the Goldwater Law Firm, P.C., this Court has jurisdiction these defendants because they engaged in business in Texas and this lawsuit arises out of these defendants' business in Texas.

This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition arose, in whole or in part, in Harris County, Texas and the amount in controversy exceeds the minimal jurisdictional limits of the court.

Venue is properly laid in the Harris County, Texas because the majority of the Defendants reside and/or have principle offices in Harris County, Texas and Harris County, Texas is where all or a substantial part of Plaintiff's cause of action arose. *See* TEXAS CIVIL PRACTICE AND REMEDIES CODE. § 15.002(a). Because venue in Harris County, Texas is proper for at least one of the Defendants, venue in Harris County, Texas is proper for all Defendants in this case. *See* TEXAS CIVIL PRACTICE AND REMEDIES CODE. § 15.005.

## IV
## FACTS

This is a legal malpractice case arising out of an underlying products liability suit against the manufacturers of Vioxx. Craig Pingle ("Mr. Pingle") began taking Vioxx as early as August of 1999. Mr. Pingle was consistently and continuously prescribed Vioxx from 1999 to 2004. As a result of taking Vioxx, Mr. Pingle suffered a severe heart attack and was hospitalized for approximately three days on or about January 8, 2002 wherein stents were placed in Mr. Pingle's arteries. In September of 2004, Merck, the manufacturer of Vioxx, recalled the drug after a study found that it doubled the risk of heart attacks and strokes. Subsequently, Mr. Pingle, realizing that his injuries and heart attack stemmed from his use of Vioxx, began searching for an attorney to bring his products liability case against the manufacturers of Vioxx.

Accordingly, on or about September 5, 2005, Mr. Pingle entered into a Power of Attorney agreement with Defendants Abraham, Watkins, Nichols, Sorrels, Matthews & Friend, now known as Abraham, Watkins, Nichols, Sorrels, Agosto & Friend ("AW"), Jim S. Adler P.C. ("Adler"), and the Goldwater Law Firm, P.C. ("Goldwater") to pursue his claims arising out of his use of Vioxx. David P. Matthews ("Matthews"), a partner of AW, worked with Adler and Goldwater on Mr. Pingle's case. Subsequently, and during the course of pursuing Mr. Pingle's claims against Vioxx, Matthews left AW and formed David P. Matthews P.C. ("Matthews P.C."). Upon his departure from AW, Matthews took Mr. Pingle's case with him to his new firm. Julie L. Rhoades and Lizy Santiago, attorneys at Matthews P.C., also assisted Matthews, Adler and Goldwater in litigating Mr. Pingle's case.

On or about January 22, 2008, Mr. Pingle was advised by Defendants to enter into a Settlement Program with Merck. Specifically, Lizy Santiago on behalf of Defendants advised Mr. Pingle to accept the Settlement Program. Under the terms of the Settlement Program qualifying claimants' injury levels, risk factors would be determined and awarded points based on various criteria. The type of injury, dosage of Vioxx, consistency, age of the claimant at the time of the injury and the duration in which the claimant took Vioxx would all affect the number of points a claimant received. Relying on the information presented by the claimant's lawyer, the Claims Administrator determines the number of points to be awarded to a claimant. The Claims Administrator would then notify each claimant, by and through their attorney, of their total point award. These points would then be given a per-point value and this figure would represent the total settlement value of each claimant's case. Based on Defendants' erroneous advice, as stated above, Mr. Pingle elected to enter into the Settlement Program. However, Mr. Pingle was not advised of the amount in which he would receive for the settlement until sometime later.

Moreover, Defendants wholly failed to provide a copy of the settlement award (notice of points award) to Plaintiffs until after the time to appeal the award had lapsed.

From the very beginning of the representation Mr. Pingle worked with Defendants and provided them with the necessary medical release forms and completed several questionnaires regarding his use of Vioxx so that Defendants would be able to diligently pursue his case. In these forms Mr. Pingle indicated that he had been taking Vioxx since at least 2000. Moreover, Mr. Pingle's medical records, which were obtained by Defendants through subpoena, indicated that Mr. Pingle had been taking Vioxx as early as August of 1999. However, Mr. Pingle was awarded points based upon an inaccurate start date. The start date used for Mr. Pingle was January 8, 2002, the same day as his heart attack. Based on this start date, the Claims Administrator awarded Mr. Pingle approximately 54.10 points. A Notice of Points Award reflecting this figure was sent to Defendants on or about March 27, 2009. After receiving the Notice of Points Award, Defendants contacted Plaintiff via telephone and informed him of the number of points awarded and advised that he accept it. Relying on Defendants' advice that he was being awarded the maximum number of points he would be entitled to, Mr. Pingle agreed to accept the point award.

Roughly three weeks later Defendants sent Mr. Pingle a letter confirming his decision to accept the point award and attached the Notice of Points Award with the letter. Based on his award of 54.10 points, Mr. Pingle obtained a gross settlement of approximately $100,000. Deducted from the interim gross settlement was a 32% attorney's fee divided amongst Matthews, Adler and Goldwater as well as $1,500.00 for expenses. Upon receiving the settlement, Mr. Pingle requested that Defendants provide an accounting of the $1,500 in expenses. However, Defendants refused to provide the accounting and/or itemize the expenses in Plaintiffs' case.

Moreover, after reviewing the Notice of Point Award, Plaintiff discovered that the start date, the date indicated for his first use of Vioxx was listed as January 8, 2002, the date of his heart attack. In fact, Mr. Pingle's actual first confirmed Vioxx use was more than three years prior in August of 1999 as indicated on various medical records obtained by Defendants. This error significantly affected the number of points awarded to Mr. Pingle as the duration that a claimant had used the drug was a considerable factor in determining the number of points being awarded. Defendants' advice to settle for a point award of 54.10 was erroneous. Defendants should have advised Mr. Pingle that the start date was incorrect and thus, the point award should be appealed. Had Defendants provided said advice, Mr. Pingle would have agreed and followed the advice of his counsel. Had the award been appealed, the error would have been resolved and Mr. Pingle would have been awarded approximately 210 points and been awarded a settlement totaling over $436,000. Defendants' erroneous advice proximately caused Mr. Pingle damages for which he sues herein.

Each individual lawyer that worked on Plaintiffs' case and the law firms that are vicariously liable for the individual lawyers had a responsibility and a duty of care to see that Plaintiffs' case was properly and diligently handled. Each individual lawyer that worked on Plaintiffs' case and the law firms that are vicariously liable for the individual lawyers breached their duty of care by failing to ensure that Plaintiffs' Vioxx point award was correct and the information supporting the point award was correct. This breach of duty, in addition to the erroneous advise as outlined above, was the proximate cause for Plaintiffs' receipt of an incorrect settlement amount against Merck and therefore, a proximate cause of Plaintiffs' damages requested in this lawsuit.

## V
## STATEMENT OF CLAIMS

Therefore, it has become necessary to bring this suit to collect a legal debt of money damages owing to Plaintiffs due to the Defendants' actions. The Defendants' actions constitute negligence and breach of fiduciary duty.

### A. NEGLIGENCE

The following errors and/or omissions by Defendants in the underlying representation constitutes negligence:

1. Failure to provide accurate advice.

2. Failure to ensure the accuracy of Plaintiffs' point award.

3. Failure to ensure that Plaintiffs obtained the most settlement for which they were entitled.

4. Failure to diligently represent Plaintiffs.

5. Failure to preserve Plaintiffs' claims, rights and defenses.

6. Failure to protect Plaintiffs' interests.

7. Failure to supply accurate information regarding Plaintiffs' claims against Merck to the Claims Administrator and/or the Defendants in Plaintiffs' underlying case.

Of course, nothing Plaintiffs did, or failed to do, caused or in any way contributed to cause the occurrences that resulted in losses and damages to Plaintiffs. On the contrary, the Defendants fell below the standard of care for attorneys practicing law in Texas, and thus, Defendants' conduct was a proximate and/or producing cause of Plaintiffs' losses and damages.

### D. BREACH OF FIDUCIARY DUTY

An attorney client relationship existed between Plaintiffs and Defendants. Thus, Defendants owed Plaintiffs a fiduciary duty as a matter of law, that is, a duty to act with loyalty and utmost good faith, to act with perfect candor, to act with integrity of the strictest kind, to fair

and honest dealing, to give full disclosure and to act without concealment or deception no matter how slight. Defendants breached this fiduciary duty by failing to provide Plaintiffs an accounting itemizing the expenses and/or providing proof of said expenses when requested. What is even more egregious is that Defendants intentionally, and with their own interest in mind, withheld Plaintiffs' funds to cover expenses without providing proof to Plaintiffs that the said expenses actually exist. These above acts constitute a breach of duty to Plaintiffs by Defendants which resulted in legal damages to Plaintiff and/or a benefit to Defendants, for which Plaintiffs now sue.

## V
## DAMAGES

### A. ACTUAL DAMAGES

Regarding the causes of action and conduct alleged above, Plaintiffs sustained pecuniary losses that were proximately caused by Defendants' conduct. Plaintiffs' damages exceed the minimum jurisdictional limits of this Court and Plaintiffs seek an award of actual damages not to exceed $500,000.

### B. EXEMPLARY DAMAGES

Plaintiffs herein seek exemplary damages allowed by law. Specifically, Defendants intentionally breached their fiduciary duty to Plaintiffs by gaining additional and unwarranted benefits by charging Plaintiffs with un-itemized expenses.

## VI
## JURY DEMAND

Plaintiffs desire to have a jury decide this case and make this formal request pursuant to Rule 216 of the Texas Rules of Civil Procedure.

## VII
## PRAYER

WHEREFORE, Plaintiff prays that after trial or hearing herein, that judgment be entered jointly and severally as prayed for, including costs of court, pre and post judgment interest at the highest legal rate, and for such other and further relief, at law and in equity, to which Plaintiff may show himself to be justly entitled, to which the Court believes him to be deserving, and for which Plaintiff will ever pray.

Respectfully submitted,

**LANCE CHRISTOPHER KASSAB, P.C.**

By: _____
LANCE CHRISTOPHER KASSAB
SBN: 00794070
1420 Alabama
Houston, Texas 77004
(713) 522-7400 (PHONE)
(713) 522-7410 (FAX)

ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify, that a true and correct copy of the above and foregoing instrument has been forwarded to Defendants pursuant to the Texas Rules of Civil Procedure on this the 6th day of May, 2010.

_____
LANCE CHRISTOPHER KASSAB